IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01407-NYW

APRIL ANN ORTIZ,

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

Magistrate Judge Nina Y. Wang

    This civil action arises under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381–83(c) for review of the Commissioner of Social Security's ("Commissioner" or "Defendant") final decision denying Plaintiff April Ortiz's ("Plaintiff" or "Ms. Ortiz") application for Supplemental Security Income ("SSI"). Pursuant to the Order of Reassignment dated December 19, 2017 [#24],[1] this civil action is before this Magistrate Judge for a decision on the merits. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. Upon review of the Parties' briefing, the entire case file, the Administrative Record, and the applicable case law, this court respectfully AFFRIMS the Commissioner's decision for the reasons stated herein.

**PROCEDURAL HISTORY**

    This case arises from Plaintiff's application for SSI protectively filed on December 2, 2013. [#11-2 at 20; #11-3 at 110–11; #11-5 at 195]. Ms. Ortiz completed the 9th grade, took

---

[1] In citing to the Administrative Record, the court refers to the Electronic Court Filing ("ECF") docket number using the convention [#___], and cites to the page number associated with the Record, found in the bottom right-hand corner of the page. For all other documents, the court cites to the ECF docket number and the page number assigned by the ECF system.

special education classes while in school, and never received her General Education Diploma ("GED"). *See* [#11-2 at 24, 43; #11-3 at 114]. Plaintiff alleges she became disabled on October 15, 2005, due to hearing loss, a learning disability, and a speech problem. *See* [#11-3 at 111]. Ms. Ortiz was twenty-five on the alleged onset date of her claimed disability.

The Colorado Department of Human Services denied Plaintiff's application administratively. *See* [#11-2 at 20; #11-3 at 110]. Ms. Ortiz timely filed a request for a hearing before an Administrative Law Judge ("ALJ") on May 19, 2014. *See* [#11-4 at 126]. ALJ Patricia E. Hartman (the "ALJ") held a hearing on January 12, 2016. [#11-2 at 20, 38]. At the hearing, Ms. Ortiz proceeded through counsel, and the ALJ received testimony from Plaintiff and Vocational Expert Cynthia Bartmann (the "VE"). *See* [#11-2 at 20, 39].

Plaintiff testified at the hearing that she currently lives alone in a public housing apartment in Fort Collins, Colorado. [*Id.* at 42]. She does not own a vehicle, and uses public transportation to get around. [*Id.*]. During the day, Ms. Ortiz typically stays home, watches television, walks her dogs, and takes 1 to 2 naps; she continued that she also has trouble falling asleep at night. [*Id.* at 49]. As to her daily activities, Ms. Ortiz testified that she cooks mostly microwavable meals, goes grocery shopping once or twice a month, washes dishes and laundry, vacuums, takes out the garbage, goes to the movies on occasion, eats out once or twice a month, and walks and cares for her three dogs. [*Id.* at 50–52]. However, Ms. Ortiz explained that she takes several 5 to 10 minute breaks while doing household chores. [*Id.* at 52].

Regarding her physical ailments, Plaintiff stated she experiences pain in her ankles, knees, and wrists with the pain shooting from her wrist to her hands, making it difficult for her to grasp or hold things or brush her teeth, but she also testified that she could still lift items weighing 70 to 80 pounds before her wrists hurt. [*Id.* at 45, 49]. Plaintiff testified that her wrist

2

pain is usually a 1–2 out of 10 in intensity, but reaches 10 out of 10 once or twice a week. [*Id.* at 53–54]. She testified to taking ibuprofen when needed, and that a doctor prescribed physical therapy for her wrists, but that she forgot to follow through with it. [*Id.* at 45–46]. Ms. Ortiz also testified that she was hospitalized somewhat recently for a "seriously bad earache." [*Id.* at 46]. She was prescribed hearing aids for her hearing issues, which helped "so-so," but she has since lost her hearing aids and cannot afford new ones. [*Id.* at 47]. Without her hearing aids Plaintiff stated that she has difficulty hearing people, or the doorbell, or the phone. [*Id.* at 53]. Plaintiff attributes her hearing loss to her Turner's syndrome that she was born with. [*Id.* at 47]. Ms. Ortiz explained that her physical ailments prohibit her from standing or sitting for more than an hour, and that she can only walk a mile. [*Id.* at 47–48].

Ms. Ortiz also explained that she suffers from depression and anxiety, which cause her to seclude herself from others in her room, but that she does not take medication or attend therapy. [*Id.* at 46]. She also testified to memory issues that cause her to constantly forget appointments and make it difficult to pay attention for more than a half-hour. [*Id.* at 48–49, 55]. Her concentration issues also make it difficult for her to follow recipes or instructions. [*Id.* at 54].

Plaintiff testified that she has not worked in the previous two years; before then she worked as a housekeeper for America Inn as well as for Poudre Valley Hospital. *See* [*id.* at 43–44]. Ms. Ortiz stated that she quit working for America Inn because it was too far from her home, and that she was terminated from Poudre Valley Hospital due to tardiness despite explaining that her poor hearing caused her to miss alarms. [*Id.*]. When asked what prohibits her from working currently, Ms. Ortiz responded that her forgetfulness and pain in her ankles, wrists, and knees were the reasons. [*Id.* at 44–45].

A VE also testified at the hearing. The VE first summarized Plaintiff's past relevant work as a cleaner/housekeeper, a specific vocational preparation ("SVP") level 2 light exertion job, and a housekeeper/hospital, a SVP level 2 medium exertion job. *See* [#11-2 at 56–57]. The VE was then to consider an individual who could perform work at all exertional levels, limited to simple, routine, and repetitive work that was goal-oriented at a maximum SVP level 2, and could not (1) climb ladders or scaffolds, (2) work in an environment with "loud auditory warning[] signals," (3) work at unprotected heights or around dangerous machinery, or (4) perform at a fast production rate. [*Id.* at 57]. Based on this hypothetical, the VE testified that such an individual could perform both of Plaintiff's previous jobs, as well as jobs as a laundry worker, SVP level 2 medium exertion job, a mail clerk, SVP level 2 light exertion job, and an addresser, SVP level 2 sedentary job. [*Id.* at 57–58]. The VE proclaimed that her testimony was consistent with the Dictionary of Occupational Titles. [*Id.* at 58].

In response to questioning from Ms. Ortiz's counsel, the VE testified that someone who required frequent breaks to lie down, had an inability to understand or carry out simple or complex instructions, and would be off-task 40-50% of the time could not perform gainful employment. [*Id.* at 59–62]. But the VE did testify that someone with limited social functioning could still perform the jobs identified in response to the ALJ's questioning. [*Id.* at 61].

On March 14, 2016, the ALJ issued a decision finding Ms. Ortiz not disabled under the Act. [#11-2 at 31]. Plaintiff requested Appeals Council review of the ALJ's decision [*id.* at 14–16], which the Appeals Council denied, rendering the ALJ's decision the final decision of the Commissioner [*id.* at 1–5]. Plaintiff sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on June 9, 2017, invoking this court's jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *cf. Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) ("[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." (internal citation omitted)). The court may not reverse an ALJ simply because she may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). But "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court may not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted).

## ANALYSIS

### I.     The ALJ's Decision

SSI is available to an individual who is financially eligible, files an application for SSI, and is disabled as defined in the Act. 42 U.S.C. § 1382. An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. § 404.1520(a)(4)(v). *See also Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988) (describing the five steps in detail). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750. Step one determines whether the claimant is engaged in substantial gainful activity; if so, disability benefits are denied. *Id.* Step two considers "whether the claimant has a medically severe impairment or combination of impairments," as governed by the Secretary's severity regulations. *Id.*; *see also* 20 C.F.R. § 404.1520(e). If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, however, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three. *Williams*, 844 F.2d at 750. Step three "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity," pursuant to 20 C.F.R. § 404.1520(d). *Id.* At step four of the evaluation process, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which defines the maximum amount of work the claimant is still "functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751; *see also id.* at 751–52 (explaining the decisionmaker must consider both the claimant's exertional and nonexertional limitations). The ALJ compares

the RFC to the claimant's past relevant work to determine whether the claimant can resume such work. *See Barnes v. Colvin*, 614 F. App'x 940, 943 (10th Cir. 2015) (citation omitted). "The claimant bears the burden of proof through step four of the analysis." *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).

At step five, the burden shifts to the Commissioner to show that a claimant can perform work that exists in the national economy, taking into account the claimant's RFC, age, education, and work experience. *Neilson*, 992 F.2d at 1120. The Commissioner can meet her burden by the testimony of a vocational expert. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99, 1101 (9th Cir. 1999).

The ALJ found that Ms. Ortiz and had not engaged in substantial gainful activity since December 2, 2013. [#11-2 at 22]. At step two the ALJ determined Ms. Ortiz had the following severe impairments: obesity, Turner's syndrome with bilateral neurosensory hearing loss, and borderline intellectual functioning ("BIF") v. learning disorder ("LD"). [*Id.*]. At step three the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Title 20, Chapter III, Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d)). [*Id.* at 23]. The ALJ then determined Plaintiff had the RFC to perform a full range of work at all exertional levels subject to several limitations [*id.* at 25], and concluded that Ms. Ortiz could perform her previous work as a cleaner/housekeeper and housekeeper/hospital [*id.* at 29]. Though the ALJ concluded that Ms. Ortiz was not disabled under the Act at step four, she also concluded at step five that there existed three additional jobs Ms. Ortiz could perform in the national economy. [*Id.* at 30–31].

On appeal, Ms. Ortiz argues the ALJ erred at step three in concluding that her BIF did not meet Listing 12.05.D.,[2] and erred in formulating Ms. Ortiz's RFC by improperly assessing Ms. Ortiz's credibility. [#19]. I consider each of these challenges in turn.

## II. Step Three

Step three of the evaluation process requires the ALJ to consider whether a claimant has an impairment that meets or medically equals any listing found at 20 C.F.R., Pt. 404, Subpt. P, App'x 1 (§§ 416.920(a)(4)(iii), 416.920(d); Listing of Impairments, 20 C.F.R. § 416.925). The severity of the impairments found in these listings precludes any substantial gainful activity. *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). A claimant meets a listed impairment if her ailments satisfy all of the listing's criteria, 20 C.F.R. § 416.925(c)(3), or if her ailments are "at least equal in severity and duration to the criteria of any listed impairment," *id.* §§ 416.926(a). *See also Davidson v. Sec'y of Health and Human Servs.*, 912 F.2d 1246, 1251–1252 (10th Cir. 1990).

Plaintiff contends the ALJ erred at step three in concluding that she does not meet or equal Listing 12.05.D. Listing 12.05 covers "Intellectual disability," which "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., [before the age of 22]." 20 C.F.R. Pt.

---

[2] There appears to be some ambiguity in Plaintiff's papers as to whether she also challenges the ALJ's conclusion that her ailments do not meet or equal Listing 12.02. *Compare* [#19 at 3; #23 at 1–3] *with* [#19 at 9–11]. But Ms. Ortiz argues in her opening brief that her BIF meets or equals Listing *12.05.D.* only. *See* [#19 at 9–11]. Thus, I do not consider any arguments as to Listings 12.02 or 12.05.A., B. that appear for the first time in Plaintiff's Reply Brief. *See Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered."). Indeed, it appears that Plaintiff's reference to Listing 12.02 is a typographical error, and that she truly intends to refer to Listing 12.05.D. *See* [#23 at 2–3, 6].

404, Subpt. P, App. 1, Listing 12.05. Establishing an intellectual disability under paragraph D requires:

> A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
> 1.   Marked restriction of activities of daily living; or
> 2.   Marked difficulties in maintaining social functioning; or
> 3.   Marked difficulties in maintaining concentration, persistence, or pace; or
> 4.   Repeated episodes of decompensation, each of extended duration.

*Id.*

Plaintiff argues that, had the ALJ properly weighed the opinion of Dr. Joyce Ackerman, the ALJ would have found her BIF to meet Listing 12.05.D. While acknowledging that Dr. Ackerman was an examining rather than treating physician,[3] Ms. Ortiz nonetheless argues that her opinion is entitled to great weight because it was consistent with "extensive" evidence of Ms. Ortiz's "severe mental impairment." *See* [#19 at 10–11; #23 at 2–3]. That is, Dr. Ackerman concluded Ms. Ortiz had a full scale IQ of 70; a Verbal Index Standard Score in the first percentile, indicating marked difficulties with maintaining social functioning; and a processing speed in the tenth percentile, indicating marked difficulties with maintaining concentration, persistence, and pace. *See* [#19 at 10–11; #23 at 2–3]. Plaintiff also contends the ALJ erred by placing greater weight on the opinion of Dr. Brill, a non-examining physician. [#19 at 11; #23 at 3].

The Commissioner counters that there is no substantial evidence corroborating Dr. Ackerman's findings. Nor can Dr. Ackerman's findings "automatically equate" to marked limitations in Ms. Ortiz's mental functioning, as Dr. Ackerman even observed that "Plaintiff was

---

[3] In her Response, Defendant argues that Plaintiff "appears to confuse the procedure for evaluating the opinion of a treating physician with that for the opinion of an examining source." [#20 at 7].

9

able to sustain attention to the tasks presented and was goal oriented." *See* [#20 at 8 (internal quotation marks omitted)]. For the following reasons, I respectfully agree.

*Medical Opinions*: Generally, the opinion of an examining source is entitled to more weight than the opinion of a non-examining source. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); 20 C.F.R. § 416.927(c)(1). Indeed, the opinion of an examining source is in no way "dismissable," *see Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012), and may be dismissed or discounted only upon an examination of the factors provided in the regulations and "specific, legitimate reasons for rejecting it[,]" *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). *See also* 20 C.F.R. § 416.927(c)(2)(i)–(ii), (c)(3)–(c)(6) (listing factors the ALJ must consider when weighing medical source opinions). Here, the ALJ afforded Dr. Ackerman's opinion partial weight "because it [was] somewhat inconsistent" with Dr. Brill's opinion—whose opinion the ALJ afforded great weight—and the record as a whole. *See* [#11-2 at 29].

Dr. Ackerman, a psychologist, conducted an agency-requested psychological evaluation of Ms. Ortiz on November 30, 2010. *See* [#11-7 at 284]. The evaluation first indicates that Ms. Oritz reported that she had received special education and speech therapy services while in school, but that she could read, write, and perform simple arithmetic so she was unsure whether she had been diagnosed with a learning disability. [*Id.* at 284, 285]. Ms. Ortiz also reported she could perform and complete basic hygienic tasks and household chores, had a driver's license, and generally kept to herself during the day because she did not socialize with others beside her mother. *See* [*id.*]. Relevant here, Dr. Ackerman opined that Ms. Ortiz's appearance and presentation were appropriate; her language and speech "appeared appropriate for her age and cognitive abilities"; her thought process was clear and logical, as she sustained attention to the tasks presented and was goal oriented; her judgment was appropriate; her cognition and memory

10

were oriented to person, place, and time, and she could perform several cognitive tasks without difficulty; and her cooperation and attitude, which revealed that she was cooperative and was engaged in tasks with good motivation, were an accurate reflection of her current abilities. [*Id.* at 285–86]. Upon completion of the Wechsler Adult Intelligence Scale – Fourth Edition ("WAIS-IV"), Dr. Ackerman reported Ms. Ortiz's scores reflected that her verbal abilities were in the Extremely Low range, and that her nonverbal/spatial abilities and ability to process visual information with speed and accuracy were in the Low Average ranges. *See* [*id.* at 288]. Dr. Ackerman thus opined that Plaintiff's cognitive abilities placed her in the BIF range, and that "she is likely to experience difficulty learning new tasks and acquiring competitive employment." [*Id.* at 289].

On May 5, 2014, Dr. Brill, a state agency psychological consultant, completed a mental RFC assessment of Ms. Ortiz based on the evidence in the record. *See* [#11-3 at 118]. Dr. Brill opined that Plaintiff had moderate limitations in her ability to understand and remember detailed instructions, and appeared to incorporate Dr. Ackerman's narrative regarding the specific understanding and memory limitations. [*Id.* at 118–19]. Dr. Brill further opined that Plaintiff had moderate limitations in her ability to carry out detailed instructions and ordinary routines without special supervision, but that she did not have any significant limitations in her ability to carry out short, simple instructions, maintain attention and concentration for extended periods, adhere to a schedule, make simple work-related decisions, or work in proximity with others. *See* [*id.* at 119]. Dr. Brill again incorporated Dr. Ackerman's report when asked to provide a narrative on Ms. Ortiz's sustained concentration and persistence limitations. [*Id.*]. Dr. Brill also opined that Plaintiff had moderate limitations in her ability to: appropriately interact with the general public, interact with coworkers, respond to changes in the work setting, and to set

realistic goals or to make plans independent of others. *See* [*id.* at 119–20]. Dr. Brill reported that Plaintiff would need some guidance with adaptation and problem solving. [*Id.* at 120]. Dr. Brill thus concluded that Ms. Ortiz's medical record revealed cognitive functional and hearing deficits with some areas of adequate basic functioning, indicating that she could perform simple, basic work tasks. [*Id.*].

The ALJ considered both opinions throughout her decision. At step 2 the ALJ relied on Dr. Ackerman's findings that Plaintiff's depression may have been caused by her thyroid issues, and that Plaintiff had the ability to carry out basic hygienic tasks and household chores, to conclude that Plaintiff's depression was not a severe impairment. *See* [#11-2 at 22–23]. At step 3 the ALJ relied on and adopted in its entirety Dr. Brill's opinion in concluding that Plaintiff suffered from no marked limitations in the paragraph B criteria of Listing 12.02; the ALJ also rejected Ms. Ortiz's suggestion that Dr. Ackerman's report found marked limitations in all of the paragraph B criteria to satisfy Listing 12.05.D. [*Id.* at 24–25]. Then, while formulating Ms. Ortiz's RFC, the ALJ again discussed Dr. Ackerman's and Dr. Brill's opinions, and afforded only partial weight to Dr. Ackerman's because she found it inconsistent with Dr. Brill's and the medical record as a whole. [*Id.* at 28–29]. Ms. Ortiz now contends that it was error to afford greater weight to Dr. Brill's opinion than to Dr. Ackerman's opinion, as substantial evidence in fact corroborates Dr. Ackerman's findings. The court now considers the medical evidence relating to Plaintiff's cognitive functioning.

*Medical Evidence:* In a December 9, 2013 Disability Report, Ms. Ortiz was observed to have difficulties with hearing and understanding, coherency, as well as with talking and answering. *See* [#11-6 at 215]. In her function report Ms. Ortiz noted her conditions limit her ability to work because she "forget[s] things fast" and can no longer "remember things." [*Id.* at

12

226]. She also noted that her daily activities include cleaning, watching television, making something to eat, going outside if it's nice, listening to music, and then watching television before going to sleep. [*Id.*]; *see also* [*id.* at 227–228 (noting that she uses public transportation, goes shopping, and pays bills)]. Ms. Ortiz explained that "forgettin[g] things" affected her ability to manage money, her interests and hobbies, and her social activities. *See* [*id.* at 228–30]. Plaintiff also reported that she does not take any medications. *See* [*id.* at 257, 264].

Treatment notes from Family Medicine Center reveal that Plaintiff presented to complete service animal paperwork on March 12, 2013. *See* [#11-7 at 290]. Her patient history revealed a severe hearing impairment, Turner's syndrome, and infertility; her general exam revealed that her appearance was comfortable, that her mental status was grossly normal, that her affect and judgment were normal, and that she was alert and oriented. *See* [*id.* at 291–92]. Treatment notes from Poudre Valley Hospital indicate that Plaintiff sought treatment for various issues, including earaches, laryngitis, and diffuse body pain; these notes also reported Plaintiff's past medical history to include a severe hearing impairment, Turner's syndrome, and infertility. *See generally* [#11-8; #11-9]. On several occasions doctors indicated that Ms. Ortiz had normal mood, affect, and behavior, was alert and oriented, and was negative for confusion and decreased concentration. *E.g.*, [#11-8 at 302, 305, 310, 311, 314, 331, 339; #11-9 at 351, 352, 372–73, 381, 382, 384, 386]. Only a handful of treatment notes reflect Plaintiff's reports of a learning disability, her complaints of memory and understanding limitations, or that she appeared to have slow mentation. *See* [#11-9 at 369–70, 375, 382].

Laura Smith completed a Mental Retardation and Subaverage Intellectual Functioning Professional Source Data Sheet on January 8, 2016. *See* [*id.* at 356]. Based on Ms. Ortiz's statements, Ms. Smith opined that Plaintiff had marked limitations in: maintaining

13

concentration, persistence, and pace; age-appropriate cognitive/communicative function, including the use of the telephone or computer; age-appropriate social functioning; understanding and remembering very short, simple instructions or detailed instructions; carrying out detailed instructions; and completing a normal workday and workweek without interruption from psychological symptoms and to perform at a consistent pace without unreasonable breaks. *See* [*id.* at 358–60]. Ms. Smith also reported that Ms. Ortiz "did demonstrate some confusion about questions but gave appropriate answers." [*Id.* at 360]. The ALJ, however, afforded Ms. Smith's opinion little weight because it was inconsistent with Dr. Ackerman's opinion and the medical record, and because Ms. Smith did not appear to be an acceptable medical source. *See* [#11-2 at 28].

Finally, Plaintiff testified to her cognitive functioning limitations. She stated that her forgetfulness, among other physical ailments, was a primary reason she could no longer work. *See* [#11-2 at 44–45]. She testified that her memory issues cause her to constantly forget appointments and make it difficult to pay attention for more than a half-hour. [*Id.* at 48–49, 55]. She further testified that concentration issues make it difficult for her to follow recipes or instructions. [*Id.* at 54].

Based on the foregoing, the court finds no reversible error in the ALJ's decision to afford only partial weight to Dr. Ackerman's opinion. To start, the burden lies with the claimant "to present evidence establishing her impairments meet or equal listed impairments[.]" *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). The medical evidence regarding Plaintiff's BIF is lacking, as most of her treatment notes relate to her hearing issues and general complaints of diffuse body pain. *See generally* [#11-8; #11-9]. This lack of corroborating medical evidence was one of the ALJ's primary reasons for affording only partial weight to Dr. Ackerman's

14

opinion. *See Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence.").

Further, Dr. Ackerman also opined that, despite Ms. Ortiz's poor WAIS-IV scores, her mental status exam revealed appropriate language and speech, mood and affect, organization and thought process, judgment, cognition and memory, and cooperation and attitude. *See* [#11-7 at 285–86]. Dr. Ackerman also reported that Ms. Ortiz could perform daily hygienic tasks and household chores, and could manage her own finances. [*Id.* at 285–289]. From this, the court is not convinced that Dr. Ackerman's opinion suggests marked limitations in any of the four categories under Listing 12.05.D. *Cf.* 20 C.F.R. § 416.926a(e)(2)(i) (defining "marked limitation" in evaluating a child's functional equivalence to the Listings as an impairment or impairments that "interferes seriously with your ability to independently initiate, sustain, or complete activities.").[4] Rather, the evidence of record suggests that, despite Dr. Ackerman's findings, Plaintiff's cognitive abilities did not seriously interfere with her ability to complete activities. The ALJ properly resolved these evidentiary conflicts, *see Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016), and this court may not "displace the agency's choice between two fairly conflicting views", *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004) (brackets omitted).

The same is true of any conflicts between Dr. Brill's and Dr. Ackerman's opinions. That is, the ALJ, not the court, is responsible for resolving any inconsistencies between medical source opinions. *See Smith v. Colvin*, 821 F.3d 1264, 1268 (10th Cir. 2016). But, in opining that Ms. Ortiz had only moderate limitations, Dr. Brill appeared to rely on Dr. Ackerman's opinion,

---

[4] Though not applicable here, I note that the current version of the Listings defines "marked limitation" as "Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. § Pt. 404, Subpt. P, App. 1-Part-A2, Listing 12.00.F.2.d. (effective Mar. 14, 2018).

suggesting that Dr. Ackerman's findings do not equate to marked limitations. Thus, for the reasons stated herein, I conclude that the ALJ did not err at step 3 in weighing the opinions of Dr. Brill and Dr. Ackerman or in concluding that Ms. Ortiz's BIF did not meet or equal Listing 12.05.D.

**III.    Plaintiff's RFC and Credibility**

A claimant's RFC is the most work the claimant can perform, and it must be consistent with the record as a whole and supported by substantial evidence. *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004); SSR 96-8p; *see also Ellison*, 929 F.2d at 536 (reiterating that the court will not reverse the ALJ's decision if supported by substantial evidence even if the court could have reached a different conclusion). Ms. Ortiz challenges the RFC assessment as not supported by substantial evidence because the ALJ improperly assessed her credibility under SSR 96-7p.[5]

"'Credibility determinations are peculiarly the province of the finder of fact' and the [court] will uphold such determinations, so long as they are supported by substantial evidence." *Ruh v. Colvin*, No. 13-CV-01255-PAB, 2015 WL 1517392, at *2 (D. Colo. Mar. 30, 2015) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). "Credibility determinations should not be conclusory, but instead 'closely and affirmatively linked' to evidence in the record." *Oliva v. Colvin*, No. 13-CV-02495-PAB, 2015 WL 5719645, at *7 (D. Colo. Sept. 30, 2015) (quoting *Kepler*, 68 F.3d at 391)). In addition to considering the objective medical evidence, the ALJ must also consider several factors, including the claimant's daily activities;

---

[5] On March 28, 2016, SSR 16-3p took effect and superseded SSR 96-7p, "eliminating the use of the term 'credibility.'" *See* TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS, *available at* https://www.ssa.gov/OP_Home/rulings/di/01/SSR2016-03-di-01.html. Because the ALJ issued her decision before this date, the court analyzes her credibility determination under SSR 96-7p.

the location, duration, frequency, and intensity of her pain; aggravating and mitigating factors; any medication taken and its effectiveness in providing relief; other treatment received aside from medications; other measures utilized to alleviate pain, *i.e.*, lying down; and any other factors that may bear on the claimant's functional limitations. *See* SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996); *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010).

Ms. Ortiz argues the ALJ's credibility assessment is "fatally flawed" in that the ALJ failed to "explain which evidence she relied on" in making her determination and, instead, relied on impermissible boilerplate language. [#19 at 14; #23 at 4]. Plaintiff further avers that, had the ALJ properly assessed her credibility in accordance with the factors outlined in SSR 96-7p and Tenth Circuit precedent, she would have found Ms. Ortiz disabled due to her hearing loss and cognitive difficulties. *See* [#19 at 15; #23 at 4–6]. The Commissioner responds that the ALJ's credibility assessment properly relied on Ms. Ortiz's ability to live alone and complete daily activities, her failure to submit medical evidence prior to 2013 concerning her hearing issues, her sporadic and limited treatment, her lack of prescribed medications for her ailments, and her failure to replace her hearing aids; and that the ALJ properly considered the objective medical evidence and Plaintiff's ability to participate in the hearing. *See* [#20 at 10]. Ms. Ortiz concedes that the ALJ "discusses the evidence at length" in her decision, but nonetheless argues that "the ALJ fails to link the vast majority of her discussion to her credibility determination." [#23 at 4]. For the following reasons, I respectfully conclude that the ALJ's credibility assessment is supported by substantial evidence.

First, the ALJ's credibility assessment cannot be categorized as impermissible boilerplate language. Though utilizing typical boilerplate language in her RFC assessment concerning the applicable standard for evaluating a claimant's credibility, *see* [#11-2 at 25], the ALJ goes on to

17

discuss Ms. Ortiz's testimony, her daily activities, the objective medical evidence, and the medical source opinions. *See* [*id.* at 26–29]. Indeed, Plaintiff even concedes that the RFC assessment contains a lengthy discussion of the evidence of record. [#23 at 4]. The ALJ then concludes, "After careful consideration of the evidence, the undersigned finds . . . the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." [#11-2 at 29]. Thus, this is not a situation where the ALJ impermissibly relied *only* on boilerplate language when assessing Ms. Ortiz's credibility, as condemned in *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) ("We have held that use of this same boilerplate paragraph is insufficient, *in the absence of a more thorough analysis*, to support an ALJ's credibility determination" (emphasis added)).

Second, a review of the ALJ's RFC assessment reveals that she considered several of the relevant factors outlined in SSR 96-7p. Indeed, a "formalistic factor-by-factor recitation of the evidence" is not required, "[s]o long as the ALJ sets forth the specific evidence [s]he relies on in evaluating the claimant's credibility[.]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000); *accord Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (noting that "common sense, not technical perfection, is [the court's] guide[]" when considering an ALJ's credibility assessment). Ms. Ortiz asserts that the credibility assessment is flawed because the ALJ did not "link the vast majority of her discussion to her credibility determination." [#23 at 4]. But, as mentioned, the ALJ discusses Plaintiff's testimony, her daily activities, her lack of prescribed medication, her objective medical records, and her medical source opinions. *See* [#11-2 at 26–29]. The ALJ then found, based on this evidence, that Plaintiff was not entirely credible. The court sees no error in this reasoning. And any reliance the ALJ placed on Ms. Ortiz being able to understand her attorney at the hearing—though not a fair assessment—is harmless, *cf. Allen v.*

*Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004), as substantial evidence supports her credibility assessment as a whole, *see White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001) (holding the "ALJ adequately supported his credibility determination. . . . [It] was linked to specific findings of fact, findings we are compelled to accept because they are fairly derived from the record.").

Finally, Ms. Ortiz argues that a proper application of the factors outlined in SSR 96-7p demonstrates that the ALJ should have (and would have) found Ms. Ortiz disabled. *See* [#19 at 15; #23 at 4–6]. However, based on the court's conclusion above, Ms. Ortiz's argument invites this court to reweigh the evidence considered by the ALJ, a task that is specifically prohibited. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (holding that the ALJ's credibility determination was supported by substantial evidence, and noting "Plaintiff's argument to the contrary constitutes an invitation to this court to engage in an impermissible reweighing of the evidence and to substitute our judgment for that of the Commissioner, an invitation we must decline."). Accordingly, I conclude that the ALJ did not err in assessing Ms. Ortiz's credibility.

## CONCLUSION

For the reasons stated herein, the court hereby **AFFIRMS** the Commissioner's final decision.

DATED: May 1, 2018

BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge